**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| RANI MEHAR, | * | |
| Plaintiff, | * | |
| v. | | Civil Action No. AW-06-1776 |
| 7-ELEVEN, INC. , | * | |
| Defendant. | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Rani Mehar ("Plaintiff") brings this suit against Defendant 7-Eleven ("7-Eleven" or "Defendant") alleging employment discrimination based on religion. Currently pending before the Court is Defendant's Motion for Summary Judgment (Paper No. 25). The Court has reviewed the entire record, along with the Pleadings, and has determined that a hearing is unnecessary. See Local Rule 105.6 (D. Md. 2004). For the reasons stated more fully below, the Court will GRANT Defendant's Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to *pro se* Plaintiff and, in large part, are taken from Plaintiff's Complaint and Deposition. Defendant operates and franchises retail convenience food stores under the trademarked name "7-ELEVEN." When a corporate-owned 7-Eleven store is franchised, all employees in that respective store are terminated as employees of 7-Eleven. Under the franchising agreement, the new franchisee becomes the operator of the store and is responsible for hiring the franchised 7-Eleven's staff. The franchisee has control of the store and the discretion to hire whomever he/she may choose.

Plaintiff was a sales associate at store No. 33250, located at 9000 Key West Avenue in Rockville, Maryland. Defendant first hired Plaintiff at a corporate-owned store in 1996. On January

1

3, 2003, Plaintiff, who is Hindu, alleged to have had a physical altercation with her supervisor, store manager Amira Sherriff, who is Muslim.  Field Consultant Ron Terpko, Sherriff's supervisor, scheduled a meeting for Sunday, January 12, 2003 to address the issues between Plaintiff and Sheriff.  Plaintiff's usual Sunday work schedule was from 6am to 2pm.  On that particular Sunday, January 12, Plaintiff planned to intend the two-year anniversary ceremony of her Father-in-law's death, set to start at 5 pm.  Plaintiff did not make Terpko aware of the ceremony.  On January 12, Sheriff scheduled Plaintiff to work from 12 noon until 8pm.  During the meeting, Plaintiff made no mention of her missing the religious ceremony.  At the meeting, Terpko told Plaintiff that he was transferring her to store No. 28862, where she had previously worked, and instructed her to work until 7pm that night.

After January 12, Plaintiff began to write letters, through certified mail, to 7-Eleven Regional and Corporate officers, seeking relief from what she felt to be harsh treatment at the hands of her supervisor.  In the letters, Plaintiff begged the 7-Eleven officers to confiscate and observe the store's surveillance film for the night of January 3, 2003, in hopes that they will see the abuse.  Plaintiff only received one response, alerting her that the tape was blank.  She did not receive any responses from Jim Key, CEO of 7-Eleven, nor Troy McWilliams, Market Manager.

In April 2003, Plaintiff learned that store No. 28862 was about to become franchised.  Not wanting to lose her job because of the franchising process, Plaintiff contacted 7-Eleven's Human Resources Department, requesting a transfer to another store and eventually asked to be transferred back to store No. 33250.  On May 1, 2003, Plaintiff had a meeting with Terpko, Sheriff, and Human Resources Generalist Maisoun Sarhan.  The meeting was designed to facilitate a healthy work environment and resulted in express written agreements regarding Plaintiff's work schedule along

with Plaintiff's and Sheriff's declarations that they would not retaliate against each other while working together.

In May 2003, Plaintiff began to accrue reprimands for her work-related behavior.  Prior to this time, Plaintiff, due to her noted customer service, claimed to have received training to become an Assistant Manager.  However, in the month of May, Plaintiff was written up for the following: taking a break outside the store, using the stool to shelve boxes, calling other employees at home in to work, making copies without paying for them, and improperly throwing away store merchandise.  Plaintiff either denied these allegations or offered explanations for her actions. Plaintiff believed Sheriff persuaded the other store employees and managers (many of whom are Muslim) to testify to false allegations against her.  Plaintiff's not using a stool, when shelving, resulted in a tear in her knee ligaments, for which she had to take time off of work and eventually received a recovery, in spite of Sheriff's refusal to classify it as work-related.

Plaintiff later learned of the franchising of store No. 33250, and again requested a transfer to another store to protect her job.  Plaintiff relied on 7-Eleven's benefits to care for her sick husband.  Her request was not granted.  Defendant assured all the store's employees that everyone would either be rehired or transferred to another store.  In October, Sheriff claimed that Plaintiff was following her around the store and touched her.  On Plaintiff's last day of work, Sheriff made the claim that Plaintiff was walking around the store brandishing a knife at the customers.  On October 27, 2003, management called Plaintiff and told her not to come to work until she was instructed. Plaintiff never worked in that 7-Eleven again, but she received pay for each day she was scheduled to work up until November 10, 2003.  On November 10, Sheriff became the franchisee of store No. 33250.  As a result, all store associates, including Plaintiff, were terminated.  Ashok Mital was the

only person retained by Sheriff.  Like Plaintiff, Mital is also Hindu.  Every other former employee of the 7-Eleven eventually found work at some other 7-Eleven, with the exception of Plaintiff.

On November 26, 2003, Plaintiff filled an initial Complaint of Alleged Religious Discrimination with the Office of Human Rights - Montgomery County of Maryland and the Equal Employment Opportunity Commission ("EEOC") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 et seq. ("Title VII").  On April 18, 2006, the EEOC dismissed Plaintiff's claim.  Plaintiff subsequently brought this action in the United States District Court for the District of Maryland on July 14, 2006.  On August 26, 2006, Defendant moved for a motion to dismiss all claims other than Religious Discrimination under Title VII (Paper No. 20).  The Court granted the motion.  After the close of discovery, Defendant filed the instant motion for summary judgment. The motion is now ripe for decision.

## STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325.  The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted).  However, the party who bears the burden of persuasion on a particular claim must present legally sufficient evidence to support each element of his claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  To

4

defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## DISCUSSION

Congress, in enacting Title VII, made it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  When employment discrimination claims are based largely on circumstantial evidence, the Court applies the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the analysis, the plaintiff has the original burden of proving by the preponderance of the evidence a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employer's action. *Id.* Should the defendant carry this burden, the plaintiff then has the burden to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* Since the Court does not have any direct evidence of Defendant discriminating against Plaintiff due to her religion, the Court will apply the *McDonnell*

*Douglas* burden shifting analysis to Plaintiff's Title VII claims of discriminatory discharge, religious accommodation, and hostile work environment.

## I.  Discriminatory Discharge

## A.  Prima Facie Case

To establish a prima facie case of discriminatory discharge, Plaintiff must prove: (1) that she is a member of a protected class; (2) that she was qualified for her job and her job performance was satisfactory; (3) that she was fired; and (4) that other employees who are not members of the protected class were retained under similar circumstances.  *Mathews v. Giant Food, Inc.*, 187 F. Supp. 2d 486, 488 (D. Md. 2002) (citing *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995)). A plaintiff alleging discriminatory discharge "satisfies her burden at the summary judgment stage if she establishes that her job performance was satisfactory and provides direct or indirect evidence whose cumulative probative force supports a reasonable inference that the discharge was discriminatory."  *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996).

Here, Plaintiff fails to establish the second prong of the discriminatory discharge prima facie case – her satisfactory job performance.  Plaintiff alleges that her religion was the motivating factor in her termination and that the store manager, Amira Sheriff, initiated a conspiracy against her due to their different religions.  Although Plaintiff puts forth some evidence of satisfactory work performance in the past, she provides no evidence of her continued satisfactory performance up until her termination.  Due to this lack of evidence, Plaintiff has not established that her job performance was satisfactory at the time of her discharge.

Moreover, Plaintiff has also failed to establish that Defendant discriminated against her on the basis of religion or that similarly situated people, of religions different than hers, were not

terminated.  When 7-Eleven store No. 33250 was franchised, all store associates, including Plaintiff, were terminated.  Furthermore, the only person retained by the franchisee was of the same religion as Plaintiff.  Even if Plaintiff was alleging that the rehiring of store No. 33250 was discriminatory, at that time – as Plaintiff acknowledges – the decision was not in Defendant's control and Plaintiff has not brought forth any evidence that 7-Eleven had some influence on the process.  For these reasons, Plaintiff has failed to establish a prima facie case of discriminatory discharge.

## B.  Discriminatory Pretext

Even if the Court assumes Plaintiff has established a prima facie case, Plaintiff's claim still fails under *McDonnell Douglass.*  Defendant has offered the explanation that Plaintiff was terminated due to the franchising of the store.  After Defendant has come forth with a legitimate non-discriminatory reason, Plaintiff has the burden to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).  Plaintiff must do more than simply challenge the truthfulness of Defendant's explanations, she must adduce sufficient evidence both that the proffered nondiscriminatory reason is false and that discrimination was Defendant's actual motivation.  *McIntyre-Handy v. West Telemarketing Corp.*, 97 F. Supp. 2d 718, 730 (E.D.Va. 2000).  However, if a plaintiff can prove a defendant's proffered reason false, it would be possible for a trier of fact to look at evidence from a strong prima facie case and decide that the defendant's unlawful motive was the real reason for the discharge.  *Reeves*, 530 U.S. at 146-47.

Here, Plaintiff has not produced any evidence that Defendant's proffered reason is pretextual.  Rather, Plaintiff agrees with Defendant's proffered reason.  Plaintiff's actions of attempting to

transfer from stores that were about to be franchised, shows her awareness that it was a possibility that the franchising process could result in the loss of her job.

Also, Plaintiff has not put forth sufficient evidence to prove that her religion was a motivating factor in her termination.  "Plaintiff's own naked opinion, without more, is not enough to create a genuine issue of material fact sufficient to defeat summary judgment." *McIntyre-Handy*, F. Supp. 2d at 732.  Defendant explained that all employees were terminated upon the franchising of Plaintiff's store.  Plaintiff alleges a discriminatory religion conspiracy, but does not provide any evidence to show that employees of different religions and similar circumstances, as far as experience or performance, were rehired at corporate-owned 7-Elevens or not fired at all.  For these reasons, Plaintiff has not fulfilled her burden of ultimate persuasion and cannot establish a discriminatory discharge claim.  Therefore, Defendant's Motion for Summary Judgment on this claim should be granted.

## II.  Religious Accomodation

To establish a prima facie religious accommodation claim, Plaintiff must prove that: (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement. *Chalmers*, 101 F.3d at 1019.  If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to show that it reasonably attempted to accommodate. *Id*.

In this action, Plaintiff's typical Sunday schedule was from 6am to 2pm, and Plaintiff alleges Amira Sherriff changed her schedule so that the two of them could meet with Ron Terpko.  Plaintiff admits that Terpko informed her of the January 12 meeting prior to that day.  However, Plaintiff has not put forth any evidence that she made Terpko, or any other 7-Eleven manager, aware of the

ceremony.  Also, since Plaintiff did not leave the store to attend the ceremony, she was not disciplined for her failure to comply with the schedule.  For these reasons, her religious accommodation claim fails.

### III.  Hostile Work Environment Claim

In order to establish a prima facie hostile work environment claim, Plaintiff must prove that: (1) the conduct in question was unwelcome; (2) the harassment was based on her religion; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) there is some basis for imposing liability on the employer.  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001).  Plaintiff has not demonstrated that any harassment, sufficiently severe or pervasive to create an abusive working environment, was due to her religion.  She alleges that Sherriff persuaded her co-workers to discriminate against her.  Plaintiff also alleges that the hostile work environment is evidenced by the fact that she was the only person written up in on the job (while everyone else was addressed verbally) and by the false allegations made against her. However, a "subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.  *Dachman v. Shalala*, 46 F. Supp. 2d 419, 440 (D. Md. 1999).  Plaintiff has failed to make out a prima facie case of hostile work environment.  As such, Defendant's Motion for Summary Judgment must be granted.

**CONCLUSION**

For the reasons stated above, the Court will GRANT Defendant's Motions for Summary Judgment (Paper No. 25).  A separate Order consistent with this Memorandum Opinion will follow.


  May 29, 2007                                              _____/s/_____
Date                                                                    Alexander Williams, Jr.
                                                                             United States District Judge